62370. SUMMERVILLE et al. v. BELK-RHODES COMPANY.

CARLEY, Judge.

Appellee-lessee and appellant-lessors entered into their original lease agreement on March 4, 1936. Through a series of subsequently negotiated supplemental agreements and renewals, the parties agreed that appellee could cut doorways in the walls of the leased premises upon condition that appellee would at the end of the lease return the walls to their original state. Appellee exercised its right under the various agreements to cut doorways in the walls of the premises. In 1957 the parties renegotiated their agreement and entered into an entirely new lease. By its terms the 1957 lease contained *"the entire agreement of the parties* hereto and *no* representations, inducements or promises by, or *agreements, oral or otherwise, between the parties, not embodied herein, shall be of any force or effect."* (Emphasis supplied.) No specific provision was made in the 1957 lease for appellee to make further structural changes in the leased premises nor did appellee specifically reassume the obligations under the previous agreements to restore the walls to their original uncut condition. Under the terms of the 1957 lease, appellee agreed only to "deliver said premises at the expiration of this lease in as good order and repair as when first received, natural wear and tear excepted." The parties continued under this 1957 lease or extensions and renewals thereof until 1975 when appellee vacated the premises. At no time between 1957 and 1975 did appellee cut doorways in the walls of the leased premises and when appellants subsequently requested in 1978 that the walls in which doorways had been cut prior to 1957 be restored to their original condition, appellee refused. It was appellee's contention that the only viable agreement between the parties was the 1957 lease and that appellee's sole obligation was to return the premises in "as good order and repair as when first received" pursuant to that agreement. Since the structural changes in the walls of the premises had all occurred before 1957 and pursuant to the terms of pre-1957 agreements, it was appellee's

assertion that it had "first received" the premises under the 1957 lease in its structurally altered state and had fulfilled its obligation under that lease by returning the premises to appellants in 1975 in that condition. Appellants, contending that appellee breached its obligation with regard to restoration of the walls, instituted the instant action to recover damages.

The case proceeded to trial before a jury. At the close of appellants' evidence the trial court granted appellee's motion for a directed verdict. Appellants appeal, asserting that issues of fact remain for jury resolution.

"Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction the ambiguity remains." *Chalkley v. Ward,* 119 Ga. App. 227, 228 (7) (166 SE2d 748) (1969). One of the "applicable rules of construction" is that "[a]ll the attendant and surrounding circumstances may be proved, and if there is an ambiguity, latent or patent, it may be explained . . ." Code Ann. § 20-704 (1). We have no difficulty in disposing of appellants' argument that the specific *terms* of the pre-1957 lease agreements are in any way relevant in the instant case, as "attendant and surrounding circumstances" which should be considered in construing the 1957 lease agreement or otherwise. By its explicit terms, the 1957 lease agreement supplanted any other prior existing agreements between the parties and it is fruitless to urge that the 1957 agreement "does not 'speak the entire contract.' " *Farm Supply Co. v. Cook,* 116 Ga. App. 814, 817 (159 SE2d 128) (1967). Moreover, "[a]n existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract. [Cits.]" *Hewlett v. Almand,* 25 Ga. App. 346 (1) (103 SE 173) (1920). Thus, the execution of the 1957 agreement rendered prior agreements "obsolete and remov[ed them] . . . as a matter affecting the rights of the parties. The former lease[s], no longer in effect, or [their] terms, [do] not constitute 'attendant and surrounding circumstances' [of the 1957] lease . . ." *Farm Supply Co. v. Cook,* 116 Ga. App. 814, 817, supra.

However, the issue of whether the *fact* that there were pre-1957 leases is an "attendant and surrounding circumstance" of the 1957 agreement and what effect that fact has on the construction of the 1957 lease is a closer question. In this regard appellants essentially urge that when consideration is given to the "circumstance" that there was an unbroken string of lease agreements between the parties dating from 1936, a latent ambiguity appears in that language of the 1957 lease wherein appellee agreed to return the premises "in as good

order and repair *as when first received...*" Appellants contend that this language could be interpreted as meaning that appellee was required to return the premises at the end of the 1957 lease agreement in the same condition as when first received by appellee pursuant to the original 1936 agreement. Under this interpretation of the 1957 lease, appellants assert that appellee would be required to restore the walls to their pre-1957 condition and that a jury, not the court, should have decided between this interpretation and appellee's construction of this language of the parties' "sole" agreement as meaning "when [the premises are] first received [under the 1957 lease]..." See *Bress v. Keep-Safe Indus.,* 155 Ga. App. 544 (271 SE2d 867) (1980).

Conceding for the sake of argument that, when viewed in the context of the long-term landlord-tenant relationship between the parties, the otherwise "entire agreement" of 1957 contains an ambiguity concerning the extent of appellee's duty to restore the premises, it does not follow that the matter automatically becomes a question for the jury. *Warrior Constructors v. E. C. Ernst Co.,* 127 Ga. App. 839 (195 SE2d 261) (1973). Although there may be ambiguity in a contract it raises no jury question unless the ambiguity remains unresolved after application by the court of all applicable rules of construction. *General Gas Corp. v. Carn,* 103 Ga. App. 542, 547 (120 SE2d 156) (1961). One of the "applicable rules of construction" is that any ambiguity in the 1957 agreement be construed against appellants, as the preparers of that agreement. "If there is left uncertainty or even ambiguity in the lease, it is the lessee and not the lessor who is to be favored, because the lessor had the power of stipulating in his own favor, though he may have neglected to do so. [Cits.] . . . [Therefore,] [a]pplying [the applicable rules of construction in the instant case], is there any doubt as to what [the 1957 lease] be held to mean? We think not. [The language must be construed as referring to a change in the condition of the premises occurring between the commencement and termination of the tenancy created by the agreement in which the covenant is contained. Cf. *Spacemaker v. Borochoff,* 112 Ga. App. 512, 514 (145 SE2d 740) (1965)]. No ambiguity is left unresolved and . . ., unless there remains an unresolved ambiguity there is nothing to submit to a jury. Construction and declaration of the meaning of the contract is the duty of the court." *Farm Supply Co. v. Cook,* 116 Ga. App. at 819-820, supra. The trial court did not err in directing a verdict for appellee.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED OCTOBER 26, 1981.

*James P. Orr, Karl M. Kothe,* for appellants.

*R. Phillip Shinall III, Robert M. Brinson,* for appellee.